IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| EDWARD D. SMITH, #876861 | § | |
| VS. | § | CIVIL ACTION NO. 9:07cv299 |
| TDCJ-CID, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Edward D. Smith, a prisoner confined at the Gib Lewis Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered lawsuit. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on December 5, 2007. On July 31, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Chip Satterwhite, Assistant Warden Eddie Baker and Nurse Kathy Gray testified under oath about prison policies and information contained in the Plaintiff's prison records.

The Plaintiff is confined at the Gib Lewis High Security Unit. He is disabled, confined to a wheelchair and must wear diapers. He has been assigned to a cell for handicapped inmates, cell number 202. He noted that the cell was not clean when he arrived there, and he is unable to clean the cell because of his condition. He has no control over his bodily functions and routinely soils himself. The prison system provides a change of clothing only every other day, thus he is forced to remain in soiled clothes. Bed linens are changed at most once a week, which forces him to sleep on soiled bedding. There is a handicapped shower in his cell, but it was filthy when he arrived there and it is still filthy. He reiterated that he is unable to clean his cell due to his condition. He also complained that there is no bar around his bed to help him get out of his bed. He finally complained that he does not have access to the commissary. He sued Assistant Regional Director Kevin Mayfield, Assistant Warden Gregory Dawson, Assistant Warden Gary Currie and Assistant Warden Michael Roesler for enforcing the policies about exchanging clothes and bedding and cleaning his cell that makes no accommodations to him due to his condition.

The Plaintiff testified that he has seen Dr. Bryce Thomas on a number occasions. He asked the doctor to issue him a medical pass to rectify these conditions, but his requests were denied. The only thing that Dr. Thomas did in his behalf was to provide him with bags in which he could place his soiled items. Prior to meeting with Dr. Bryce, the Plaintiff met with Physicians Assistant Moore, who likewise failed to provide him any help.

The Plaintiff sued Law Library Supervisor James Cunningham for problems he had with gaining access to court. He specifically noted that Cunningham was slow in providing him a certified copy of his trust fund activities. The Court notes, however, that the lawsuit was filed on December 5, 2007. The Court ordered the Plaintiff to submit the $350 filing fee or an application

to proceed *in forma pauperis* on December 13, 2007. The Plaintiff submitted the application to proceed *in forma pauperis*, along with the certified copy of his trust fund activities on December 26, 2007. The certified copy of the trust fund activities is dated December 19, 2007. The Plaintiff also complained that the law library has returned several of his requests for legal research with a reply of "be more specific." For example, he received a response of "be more specific" when he asked to see a copy of the Texas Code of Criminal Procedure. It is noted that the hardback edition of the Texas Code of Criminal Procedure consists of several volumes.

The Plaintiff also made vague complaints that officers have retaliated against him due to his grievances. He was told that he would never be allowed to use the commissary due to his grievances. He also complained that someone has tampered with his mail. Occasionally, letters to his mother have not been received by her. He also received a letter from his mother than contained another letter in it that was vulgar. He did not know the origin of the vulgar letter.

Nurse Gray testified under oath from the Plaintiff's medical records. She described the Plaintiff's condition as being a paraplegic. She noted that Dr. Thomas ordered disposable under garments for the Plaintiff starting in January, 2007. Dr. Thomas also ordered sinus medication, such as Claritin. She noted that the Plaintiff has signed several refusal of medical care forms, including refusals regarding his sinus medication.

The facts as alleged about the Plaintiff's living conditions give rise to two types of possible claims. The first involves civil rights claims. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that

deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Defendants Mayfield, Dawson, Currie, Roesler, Thomas and Moore should respond to the Plaintiff's deliberate indifference claims.

The second type of claim involves the Americans with Disabilities Act ("ADA"). Congress enacted the ADA to establish a "comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). *See also Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 239 (5th Cir. 2005). The Supreme Court fully explained the purpose of Title II of the ADA as follows:

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.). A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, ... or other instrumentality of a State," § 12131(1). We have previously held that this term includes state prisons. See *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). Title II authorizes suits by private citizens for money damages against public entities that violate § 12132. See 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).

*United States v. Georgia*, 546 U.S. 151, 153-54 (2006). A State "shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose

an undue hardship on the operation of its program." *See Olmstead v. Zimring*, 537 U.S. 581, 606 n.16 (1999).

The Supreme Court held that Title II abrogates state sovereign immunity. 546 U.S. at 159. "Title II's enforcement provision incorporates by reference § 505 of the Rehabilitation Act of 1973, . . . which authorizes private citizens to bring suits for money damages." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). The Fifth Circuit has likewise held that private citizens may bring private causes of action for violations of the ADA. *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002).

In the present case, the Plaintiff has alleged facts supporting a potentially successful ADA claim. TDCJ-CID, along with Defendants Mayfield, Dawson, Currie, Roesler, Thomas and Moore should respond to the ADA claims.

It is noted that the Plaintiff's lawsuit included civil rights claims filed pursuant to 42 U.S.C. § 1983 against TDCJ-CID. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the Supreme Court held that neither a state nor a state official is a "person" for purposes of liability under 42 U.S.C. 1983. The Texas prison system is immune from liability in § 1983 litigation. *Ruiz v. Estelle*, 679 F.2d 1115, 1137 (5th Cir. 1982); *Pete v. Metcalfe*, 8 F.3d 214, 216 (5th Cir. 1993). The Plaintiff's § 1983 claims against TDCJ-CID fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The § 1983 claims against TDCJ-CID should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff's next claim is that Law Library Supervisor Cunningham has denied him access to court. Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). Prison officials may not abridge or impair an inmate's right of access to court. *See Ex parte Hull*, 312 U.S. 546, 549 (1941); *Johnson v. Avery*, 393 U.S. 483, 486 (1969). "While the precise contours of a prisoner's right of access to court remain obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). The Supreme Court has held that the right of meaningful access to court imposes a duty on prison officials to provide indigent inmates with either an adequate law library or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. at 828. The Texas prison system provides both attorneys and law libraries. The parameters of the prison system's access to court plan was fully developed in conjunction with the *Ruiz* litigation.

To prevail on a claim that his right of access to court has been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendants' actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (internal quotations omitted); *Lewis v. Casey*, 518 U.S. 343, 351 (1996). He must identify the nonfrivolous, arguable underlying claim. *Id.* There is no constitutional violation when a prisoner has time to reprepare and file his legal document in a court despite impediments caused by officials. *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). A civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice. *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir. 1991). The Plaintiff has not shown that he has been harmed by the actions of Cunningham. The claims against Cunningham fail to state a claim upon which

6

relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also alleged that he has been the victim of retaliation. To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). For example, officials may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.* Finally, the retaliatory adverse act must be more than a *de minimis* act. *Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006), *cert. denied*, 127 S.Ct. 596 (2006). In *Morris*, the Fifth Circuit held that a job transfer from the commissary to the kitchen was *de minimis*, while a transfer to a more dangerous unit was a sufficiently adverse retaliatory act. *Id.* at 687.

The Plaintiff's retaliation claims are conclusory. He has not identified people who retaliated against him because he exercised his constitutional rights, and that they engaged in sufficiently adverse retaliatory acts against him. The Plaintiff's retaliation claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The retaliation claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained that someone tampered with his mail. Mail tampering constitutes a cognizable claim under 42 U.S.C. § 1983. *See, e.g., Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Procunier v. Martinez*, 416 U.S. 396 (1974). On the other hand, prison authorities may open a prisoner's mail for inspection. *Guajardo v. Estelle*, 580 F.2d 748, 759 (5th Cir. 1978). A prisoner will be entitled to relief when he is able to show that he has been prejudiced or harmed by authorities tampering with his legal mail. *Jackson v. Cain*, 864 F.2d at 1244; *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). The Plaintiff does not alleged facts showing that he was harmed in any way by an unidentified person tampering with his mail. The mail tampering claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the Plaintiff may proceed with his deliberate indifference to serious medical needs claims against Assistant Region I Director Kevin Mayfield, Assistant Warden Gregory Dawson, Assistant Warden Gary L. Currie, Assistant Warden Michael A. Roesler, Dr. Bryce C. Thomas and P. A. Mike Moore. It is further

**ORDERED** that the Plaintiff may proceed with the Americans with Disabilities Act claims against TDCJ-CID, Assistant Region I Director Kevin Mayfield, Assistant Warden Gregory Dawson,

Assistant Warden Gary L. Currie, Assistant Warden Michael A. Roesler, Dr. Bryce C. Thomas and P. A. Mike Moore. It is finally

**ORDERED** that the Plaintiff's remaining claims are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

So **ORDERED** and **SIGNED** this **4** day of **August, 2008.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE